# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MMA GROUP 1 INC. d/b/a   : CIVIL ACTION NO. 3:26-CV-01385
TOBACCO HUT STATE COLLEGE, :
*et al.*,         : (Judge Munley)
            :
    Plaintiffs,    :
            :
  v.         :
            :
DAVID W. SUNDAY, JR., *et al.*,  :
            :
    Defendants.   :

---

## JOINT CASE MANAGEMENT PLAN

---

  <u>Instructions</u>: In many cases there will be more parties in the action than there are spaces provided in this form.  Each party shall provide all requested information. If the space on this form is not sufficient, the form should be retyped or additional pages attached.

  No party may submit a separate Case Management Plan.  Disagreements among parties with respect to any of the matters below shall be set forth in the appropriate section.

  Having complied with the meet and confer requirements set forth in the LOCAL RULES, or with any orders specifically modifying their application in the above-captioned matter, the parties hereby submit the following Joint Case Management Plan.

1

## 1.    Principal Issues

### 1.1    Separately for each party, please give a statement summarizing this case:

#### By Plaintiff:

This case involves a constitutional challenge to Act 57 of 2025, as amended 72 P.S. § 206–I ("Act 57"), a recently enacted Pennsylvania statute that conditions the manufacture, wholesale, and retail sale of electronic nicotine delivery systems ("ENDS"), commonly known as e-cigarettes or vapes, on federal regulatory compliance.  The Federal Food and Drug Administration ("FDA") has regulated e-cigarettes containing nicotine derived from tobacco since 2016 and e-cigarettes containing nicotine derived from any source since 2022.  In doing so, the FDA has required e-cigarettes and other ENDS products to submit a Premarket Tobacco Product Application ("PMTA") and receive a "marketing granted order" before introduction into the market.  The PMTA process is time-consuming and expensive, with application costs estimated to exceed $500,000.  To date, the FDA has issued only 45 marketing granted orders for e-cigarettes—almost all of which are manufactured, marketed, and/or sold by the largest tobacco companies in the United States.

At the same time, however, the FDA has recognized that forcing unauthorized ENDS products off the market might result in users reverting to more harmful traditional cigarettes.  The FDA has therefore sought to strike a balance between the risk that e-cigarettes pose to youth, on the one hand, and their potential benefit in helping adult smokers completely transition from or significantly reduce smoking combustible cigarettes, on the other.  To that end, the FDA has consistently exercised its enforcement discretion with respect to unauthorized e-cigarettes on a case-by-case basis to allow most such products to remain on the market.  And the FDA has adhered to this discretionary enforcement policy across multiple presidential administrations—and the resultant changes of FDA Commissioners over that time.

Unhappy with that regime, the nation's largest tobacco companies have unsuccessfully challenged or sought to bypass the

2

FDA's enforcement discretion as part of an effort to exclude competing e-cigarettes from the market. In 2023, for instance, the FDA denied a Citizen Petition submitted by RAI Services Company, an affiliate of R.J. Reynolds Tobacco Company, that requested the FDA end its case-by-case enforcement policy in favor of an enforcement policy targeting e-cigarettes without pending PMTAs or marketing granted orders. By way of another example, in 2024, the U.S. International Trade Commission dismissed a complaint filed by R.J. Reynolds Tobacco Company and R.J. Reynolds Vapor Company that would have bypassed the FDA entirely by barring from importation any e-cigarettes without pending PMTAs or marketing granted orders. Soon after R.J. Reynolds' failed efforts to exclude competing e-cigarettes at the federal level, state legislatures across the country began to introduce legislation that would operate as a *de facto* ban on e-cigarettes without pending PMTAs or marketing granted orders.  But a state "may not condition market access on compliance with federal authorization standards in a manner that effectively transfers the FDA's enforcement discretion to state authorities." *Iowans for Alts. to Smoking & Tobacco, Inc. v. Iowa Dep't of Rev.,* 781 F. Supp. 3d 724, 744 (S.D. Iowa 2025); *see Nova Distro, Inc. v. Miyares*, No. 3:25–cv–857–DJN, 2025 WL 3680321 (E.D. Va. Dec. 18, 2025); *see also Vapor Tech. Ass'n v. Marshall*, 03–CV–2025–901284 (Ala. Cir. Ct.—Montgomery Cnty. Aug. 15, 2025).

Against this backdrop, on December 22, 2025, the Pennsylvania General Assembly enacted Act 57 of 2025 ("Act 57").  Similar to the statutes passed in Alabama, Iowa, and Virginia, Act 57 bans the manufacture, retail sale, and purchase of any e-cigarettes in Pennsylvania without a pending PMTA or marketing granted order. Plaintiffs manufacture, distribute, and/or sell e-cigarettes in Pennsylvania without a pending PMTA or marketing granted order, and therefore, are directly impacted by the *de facto* ban established by Act 57.  Plaintiffs thus bring this action to declare what they term the "Act 57 Enforcement Provisions" unconstitutional on preemption and due process grounds and enjoin AG Sunday and Secretary Browne from implementing or enforcing the same.

**By Defendants:**

On December 22, 2025, Pennsylvania's legislature enacted Act 57, which limits the sale of electronic nicotine delivery systems

("ENDS" or "e-cigarettes").   ***See*** 72 P.S. § 206-I.   Plaintiffs—a collection of manufacturers, distributors, and retailers of e-cigarettes— allege an inherent constitutional right to continue hawking harmful, unregulated, and unapproved products that routinely fall into the hands of children.   They offer a strained reading of federal statutes in order to suggest that Pennsylvania's law—and, indeed, the scores of state laws throughout the country—is preempted.   It is unsurprising that the majority of courts to consider the arguments that Plaintiffs present here have rejected them.   *Wisconsinites for Alternatives to Smoking & Tobacco, Inc. v. Casey*, 172 F.4th 976 (7th Cir. 2026); *Vapor Tech. Ass'n v. Wooten*, No. 4:25-CV-00076-M-RJ, 2025 WL 1787420 (E.D.N.C. June 27, 2025), *Vapor Tech. Ass'n v. Wooten*, 25-1745 (4th Cir. July 28, 2025) (order) (denying injunction pending appeal); *Vapor Tech. Ass'n v. Graham*, No. 1:25CV336-LG-BWR, 2025 WL 3281428 (S.D. Miss. Nov. 25, 2025).   The Commonwealth respectfully requests that this Honorable Court should join that chorus.

By way of background, enacted in 1938, the Federal Food, Drug, and Cosmetic Act ("FDCA"), Pub. L. No. 75-717, 52 Stat. 1040 (1938), gives the FDA certain power to regulate consumer products related to health and welfare.   In 2009, the Family Smoking Prevention and Tobacco Control Act ("TCA"), Pub. L. No. 111-31, 123 Stat. 1776 (2009), extended the FDA's regulatory authority to "new tobacco product[s]," requiring manufacturers to receive approval from the FDA before marketing those products.   21 U.S.C. § 387j.   A "new tobacco product" is one not commercially marketed in the United States as of February 15, 2007, or modified after that date.   *Id.* § 387j(a)(1).

"[T]he TCA's text shows Congress's '**explicit decision to preserve for the states a robust role in regulating, and even banning, sales of tobacco products**.'" *Wisconsinites for Alternatives to Smoking & Tobacco, Inc. v. Casey*, 172 F.4th 976, 984–85 (7th Cir. 2026) (quoting *R.J. Reynolds Tobacco Co. v. County of Los Angeles*, 29 F.4th 542, 550 (9th Cir. 2022) (quoting *U.S. Smokeless Tobacco Mfg. Co. v. City of New York*, 708 F.3d 428, 436 (2d Cir. 2013))) (citing 21 U.S.C. § 387p) (emphasis added).   Specifically, the TCA's preservation clause expressly preserves a state's power to create regulations "in addition to, or more stringent" than the statute's requirements.   21 U.S.C. § 387p(a)(1).   While the TCA's preemption clause preempts specified forms of state regulation, the savings clause

makes clear that preemption "does not apply to requirements relating to the sale, distribution, possession, information reporting to the State, exposure to, access to, the advertising and promotion of, or use of, tobacco products by individuals of any age, or relating to fire safety standards for tobacco products." 21 U.S.C. §§ 387p(a)(2)(A)-(B). Under this tripartite framework, "a state can place restrictions on the retail sale of a tobacco product, including banning its sale altogether." *R.J. Reynolds Tobacco Co. v. County of Los Angeles*, 29 F.4th 542, 560 (9th Cir. 2022).

Accordingly, the FDCA and TCA do **not** preempt the states' authority to regulate the **sale** of tobacco and tobacco-related products.

Instead, the preservation clause's text demonstrates, at minimum, that Congress intended that States use the TCA as a **floor** for further restrictions on tobacco product manufacturers from accessing distribution and sales. *Wisconsinites*, 172 F.4th at 986-87 (citations omitted). Additionally, "[t]he language of the Savings Clause also suggests Congress's apparent intent that States retain the ultimate authority to prohibit the sale of a tobacco product altogether, regardless of its compliance with TCA provisions." *Id.* at 987 (citations omitted). "[T]he power to enact and enforce the same or *additional* sales requirements is expressly preserved to the States after adopting the TCA, at least so far as tobacco product requirements are created by state law[.]" *Id.* (citations omitted) (emphasis in original). Further, "the full text of the TCA and FDCA" make it "unlikely that Congress intended to preempt the States' authority to enact and enforce laws restricting the sale of tobacco products that rely in part on TCA requirements[.]" *Id.* (citations omitted).

Here, Plaintiffs have argued that only the federal government has "exclusive authority" to enforce the TCA. However, as the Seventh Circuit and multiple other District Courts have rightly concluded, the power to enact and to enforce additional sales requirements is expressly preserved to the states. For all these reasons, the Commonwealth respectfully requests that this Honorable Court uphold the constitutionality of Section 206-I in its entirety and permit the Department of Revenue and Office of Attorney General to implement and to enforce the will of the General Assembly.

5

**1.2    The facts the parties <u>dispute</u> are as follows:**

Defendants have yet to respond to the Verified Complaint, and therefore, it is unknown at this time which facts, if any, remain in dispute.

**The facts the parties <u>agree</u> upon are as follows:**

(1)    On December 22, 2025, the Pennsylvania General Assembly enacted Act 57 of 2025, as amended 72 P.S. § 206–I ("Act 57").

**1.3    The legal issues the parties <u>dispute</u> are as follows:**

The parties dispute virtually all legal issues at this juncture, including, but not limited to, whether the so-called "Act 57 Enforcement Provisions" are impliedly preempted under Section 337(a) of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301–399j ("FDCA"), or in the alternative, are expressly preempted under Section 387p of the Family Smoking Prevention and Tobacco Control Act, Public L. No. 111-31, 123 St. 1776 (2009) ("TCA").

**The legal issues the parties <u>agree</u> upon are as follows:**

The parties agree that (1) this Court has subject-matter and personal jurisdiction to adjudicate Plaintiffs' claims; (2) venue in this Court is proper; (3) Plaintiffs' claims are timely under the applicable statutes of limitations; and (4) there are no disputes regarding service.

**1.4    Identify any unresolved issues as to service of process, personal jurisdiction, subject matter jurisdiction, or venue:**

None.

**1.5    Identify any named parties that have not yet been served:**

None.

**1.6    Identify any additional parties that:**

Plaintiff intends to join: None known or intended at this time.

Defendants intend to join: None known or intended at this time.

**1.7    Identify any additional claims that:**

Plaintiff intends to add: None known or intended at this time.

Defendants intend to add: None known or intended at this time.

## 2.0    Disclosures

The undersigned counsel certify that they have made the initial disclosures required by Federal Rule of Civil Procedure 26(a)(1) or that they will do so within the time provided by that rule.

**2.1    Separately for each party, list by <u>name and title/position</u> each person whose identity has been disclosed.**

The parties have not yet tendered their initial disclosures under Rule 26(a)(1) but will do so within the timeline set forth in that rule.

## 3.0    Early Motions

**Identify any motion(s) whose early resolution would <u>likely</u> have a significant effect either on the scope of discovery or other aspects of the litigation:**

By Plaintiff:    Currently pending before the Court is Plaintiff's Motion for Preliminary Injunction (Dkt. 5), which will likely have a significant effect on either the scope of discovery or other aspects of the litigation.

By Defendants: Depending upon the disposition of the Motion for Preliminary Injunction, Defendants reserve the right to file an early motion seeking to dismiss this matter.

## 4.0    Discovery

4.1    Briefly describe any discovery that has been completed or is in progress:

By Plaintiff: Plaintiff is in the process of drafting initial disclosures and will provide them within the required timeframe. Plaintiff is also in the process of drafting written discovery requests and plans to be expedient.

By Defendants: The Commonwealth was only served with the Complaint and Preliminary Injunction Motion on May 20, 2026, and has not had time to determine the scope of its discovery requests.

**4.2** **Describe any <u>discovery</u> that all <u>parties agree</u> should be conducted, indicating for each discovery undertaking its purpose or what kinds of information will be developed through it (*e.g.*, "plaintiff will depose Mr. Jones, defendant's controller, to learn what defendant's revenue recognition policies were and how they were applied to the kinds of contracts in this case"):**

The parties agree that written discovery and accompanying depositions may clarify, narrow, or resolve certain issues in dispute and may help to identify additional witnesses.

**4.3** **Describe any <u>discovery</u> that one or more parties want(s) to conduct but <u>to which another party objects</u>, indicating for each such discovery undertaking its purpose or what kinds of information would be developed through it:**

None at this time.

**4.4** **Identify any <u>subject area limitations on discovery</u> that one or more parties would like imposed, at the first stage of or throughout the litigation:**

None at this time.

**4.5** **For each of the following discovery tools, <u>recommend the per-party or per-side limitation</u> (specify a number) that should be fixed, subject to later modification by stipulation or court order on an appropriate showing (where the parties cannot agree, set forth separately the limits recommended by plaintiff(s) and by**

**defendant(s)):**

Plaintiffs' proposal:

**4.5.1  depositions (excluding experts) to be taken by:**

    Plaintiff:    <u>10</u>        Defendants: <u>10</u>

**4.5.2  interrogatories to be served by:**

    Plaintiff:    <u>25</u>        Defendants: <u>25</u>

**4.5.3  document production requests to be served by:**

    Plaintiff:    <u>25</u>        Defendants: <u>25</u>

**4.5.4  requests for admission to be served by:**

    Plaintiff:    <u>15</u>        Defendants: <u>15</u>

Defendants' proposal:

The Commonwealth has only been aware of this action for two (2) weeks, with the majority of that time dedicated to preparing the brief in response to Plaintiffs' Motion for Preliminary Injunction and preparing for the preliminary injunction hearing.  The Commonwealth has not had any time to assess its discovery needs, if any, nor to determine what it would consider reasonable discovery requests from Plaintiffs. However, the Commonwealth is willing to discuss per-party limitations with Plaintiffs in the future.

**4.6  Discovery of Electronically Stored Information**

☒    Counsel certify that they have conferred about the matters addressed in M.D. Pa LR 26.1 and that they are in agreement about how those matters will be addressed in discovery.

☐    Counsel certify that they have conferred about the matters addressed in M.D. Pa. LR 26.1 and that they are in agreement

about how those matters will be addressed in discovery with the following exceptions:

## 5.0 Protective Order

**5.1** **If entry of a protective order is sought, attach to this statement a copy of the proposed order. Include a statement justifying the propriety of such a protective order under existing Third Circuit precedent.**

The parties are discussing the potential need for a protective order given that Defendants may seek confidential and/or proprietary information of Plaintiffs as part of the discovery process.

**5.2** **If there is a dispute about whether a protective order should be entered, or about certain terms of the proposed order, briefly summarize each party's position below:**

N/A

## 6.0 Scheduling

6.1 Final date for joining additional parties: N/A

6.2 Final date for amending pleadings: June 22, 2026

6.3 All fact discovery commenced in time to be completed by: September 3, 2026

6.4 All potentially dispositive motions should be filed by: October 5, 2026

6.5 Reports from retained experts due:

from Plaintiff by: N/A

from Defendants by: N/A

6.6 Supplementations due: N/A

6.7    All expert discovery commenced in time to be completed by: <u>N/A</u>

6.8    This case may be appropriate for trial in approximately:

    <u>X</u>    240 Days from the filing of the action in this court

    ___    365 Days from the filing of the action in this court

    ___    Days from the filing of the action in this court

6.9    Suggested Date for the final Pretrial Conference: <u>January 4, 2027</u>

6.10    Trial

    6.10.1    Suggested Date for Trial: <u>January 11, 2027</u>

***Defendants reserve the right to petition this Honorable Court for revisions of this schedule in light of this Court's decision on Plaintiff's Motion for Preliminary Injunction.***

**7.0    Certification of Settlement Authority (All Parties Shall Complete the Certification)**

I hereby certify that the following individuals have settlement authority.

<u>For Plaintiff</u>:

<u>Name</u>:        Raad Saleh
<u>Title</u>:        Majority owner of the Tobacco Hut Plaintiffs and Plaintiff Nova Distro, Inc.
<u>Address</u>:    Contact through Plaintiffs' Counsel
<u>Telephone</u>:  717-868-8378

<u>Name</u>:        Kenny Patel
<u>Title</u>:        Member, Plaintiff 101 Distributors LLC
<u>Address</u>:    Contact through Plaintiffs' Counsel
<u>Telephone</u>:  717-868-8378

11

For Defendants:

Name:        Edmund Berger
Title:       Chief Deputy Attorney General, Tobacco Enforcement Section
Address:     Contact through the Commonwealth's Counsel
Telephone:   (215) 756-5230

Name:        Jonathan W. Chatham
Title:       Deputy Chief Counsel, Governor's Office of General Counsel
Address:     Contact through the Commonwealth's Counsel
Telephone:   (215) 756-5230

**8.0    Alternative Dispute Resolution ("ADR")**

    **8.1    Identify any ADR procedure to which this case already has been assigned or which the parties have agreed to use.**

        N/A

    **8.2    If the parties have been unable to agree on an ADR procedure, but one or more parties believe that the case is appropriate for such a procedure, identify the party or parties that recommend ADR and the specific ADR process recommended:**

        N/A

    **8.3    If all parties share the view that no ADR procedure should be used in this case, set forth the basis for that view:**

        N/A

**9.0    Consent to Jurisdiction by a Magistrate Judge**

Indicate whether all parties agree, pursuant to 28 U.S.C. § 636(c)(1), to have a magistrate judge preside as the judge of the case with appeal lying to the United States Court of Appeals for the Third Circuit:

All parties agree to jurisdiction by a magistrate judge of this court: ☐ Y   ☒ N

If parties agree to proceed before a magistrate judge, please indicate below which location is desired for the proceedings:

    ___ Scranton/Wilkes-Barre
    ___ Harrisburg
    ___ Williamsport

**10.0  Other Matters**

**Make any other suggestions for the case development process, settlement, or trial that may be useful or necessary to the efficient and just resolution of the dispute.**

N/A

**11.0  Identification of Counsel**

**Counsel shall be registered users of the court's Electronic Case Files System (ECF) and shall file documents electronically in accordance with the Local Rules of Court and the Standing Order RE: Electronic Case Filing Policies and Procedures.  Electronic filing is required unless good cause is shown to the Chief Judge why counsel cannot comply with this policy.  Any request for waiver of electronic filing must be filed with the Clerk's Office prior to the case management conference.  The Chief Judge may grant or deny such request.**

**Identify by name, address, and telephone number lead counsel for each party.  Also please indicate ECF User status below.**

Dated:    June 4, 2026        /s/ *Joseph V. Schaeffer*
Casey Alan Coyle, Esquire
PA ID No. 307712
BABST, CALLAND, CLEMENTS & ZOMNIR, P.C.
300 N. Second Street, Suite 801
Harrisburg, PA 17101
(717) 868-8378
ccoyle@babstcalland.com

Joseph V. Schaeffer, Esquire
PA ID No. 323256
BABST, CALLAND, CLEMENTS & ZOMNIR, P.C.
Two Gateway Center, Floor 6
603 Stanwix St.
Pittsburgh, PA 15222
(412) 394-5499
jschaeffer@babstcalland.com

Stewart R. Pollock, Esquire
VA ID No. 92466 (*pro hac vice*)
MORAN REEVES & CONN, P.C.
1211 E. Cary Street
Richmond, Virgina 23219
(804) 864-4832
spollock@moranreevesconn.com

*Counsel for Plaintiffs*

☒ ECF Users
☐ Waiver Requested (as separate document)
☒ FRCP 7.1 (statement filed if necessary)

14

Dated: June 4, 2026

/s/ *Nicole R. DiTomo (by JVS w/ permission)*

Brooke E. Newborn, Esquire
Deputy Attorney General
PA ID No. 209732
Nicole R. DiTomo, Esquire
Chief Deputy Attorney General
Civil Division
Office of Attorney General
1600 Arch Street, Suite 300
Philadelphia, PA 19103
(215) 756-5230
bnewborn@attorneygeneral.gov

*Counsel for Defendants*

☒ ECF Users
☒ Waiver Requested (as separate document)
☐ FRCP 7.1 (statement filed if necessary)