IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MMA GROUP 1 INC., d/b/a Tobacco Hut State College Inc., *et al.*, Plaintiffs** | : | **No. 3:26cv1385** |
| **v.** | : | **(Judge Munley)** |
| **DAVID W. SUNDAY, JR., in his official capacity as Attorney General of the Commonwealth of Pennsylvania; and PATRICK M. BROWNE, in his official capacity as Secretary of Revenue of the Commonwealth of Pennsylvania, Defendants** | : | |

**MEMORANDUM ORDER**

On October 14, 2026, the court entered summary judgment in favor of the defendants after determining that Act 57 of 2025, 72 PA. STAT. § 206-I, is not preempted by the Family Smoking Prevention and Tobacco Control Act ("TCA") or the Federal Food, Drug, and Cosmetic Act ("FDCA"). MMA Grp. 1 Inc. v. Sunday, No. 3:26cv1385, 2026 WL 3077462 (M.D. Pa. Oct. 14, 2026). Plaintiffs filed a notice of appeal on October 19, 2026. (Doc. 52). They now move for a temporary injunction pending appeal under Federal Rule of Civil Procedure 62(d). (Doc. 53). Specifically, plaintiffs request an order enjoining defendants

from taking enforcement action against them while this appeal proceeds.[1] Id. ¶ 6. For the reasons set forth below, plaintiffs' motion will be denied.

**Background**

The court's summary judgment memorandum sets out the relevant facts, briefly repeated here. Act 57 bars the retail sale of nicotine vapes that are not listed in a directory maintained by Pennsylvania's Attorney General. 72 PA. STAT. § 206-I (n)(1). A product is eligible for the directory if its manufacturer certifies that: 1) the product has a marketing granted order from the Food and Drug Administration ("FDA"); 2) it is the subject of a premarket tobacco product application ("PMTA") that remains pending or whose denial has been stayed, rescinded, or vacated; or 3) it differs from such a product only in name, brand style, or packaging. § 206-I (b)(1). A manufacturer may be excluded from the directory for reasons other than a lack of federal authorization or pending PMTA, such as failing to: pay the state's annual fees, post a surety bond, appoint a Pennsylvania agent for service of process, furnish importer declarations, or submit a truthful certification to the Commonwealth. § 206-I (c), (i), (j), (k), (u). A manufacturer may also be excluded from the directory for selling uncertified products in the state, involuntary removal from another state's ENDS directory,

---

[1] The enforcement provisions of Act 57 are located at 72 PA. STAT. § 206-I (m), (n), (o), (q), (r), and (s).

denial of listing in another state's ENDS directory, failing to provide required compliance information, violating federal nicotine packaging standards, or holding certain criminal convictions. § 206-I (j)(1)–(6).

The Attorney General first published the directory on June 20, 2026. (Doc. 34, Pl. SOF, ¶ 84). Retailers then had a 120-day sell-through period regarding unlisted products. 72 PA. STAT. § 206-I (n)(1). That period ended on October 19, 2026. (Doc. 34, Pl. SOF, ¶ 84; see Doc. 24, Ord., at 4). Pursuant to the statute, unlisted nicotine vapes are now contraband and subject to seizure, forfeiture, and destruction. § 206-I (n)(3). Retailers, wholesalers, or importers who sell unlisted nicotine vapes are subject to a wide array of other enforcement actions, such as civil penalties for each product. § 206-I (*o*). Violations of this section are also deemed to be "an unfair or deceptive act or practice" in violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law. § 206-I (*o*)(6).

Plaintiffs are corporations or LLCs engaged in the manufacture, wholesale distribution, and retail sale of e-cigarettes in Pennsylvania without marketing granting orders or pending PMTAs. (Doc. 34, Pl. SOF, ¶ 64). The motion for injunctive relief pending appeal rests largely on the economic showing plaintiffs made earlier in this case. Plaintiff Nova Distro makes the "Hut Bar," which the Tobacco Hut entities have sold for two to three years without FDA authorization.

(Doc. 26, Hr'g Tr., R. Saleh, 34:23–36:6, 41:10-21, 42:5-11). As of June 2026, Tobacco Hut sold 200 to 300 other unauthorized nicotine vapes. Id., 58:10-15. As of that time, Tobacco Hut also had $2,000,000 worth of product subject to seizure under Act 57. (Doc. 34, Pl. SOF, ¶ 97). 101 Distributors distributes nicotine vapes that have not been approved by the FDA along with ones that have been approved. (Doc. 26, Hr'g Tr., K. Patel, 63:24–64:19). Per one of its owners, the vapes that lack FDA approval are more popular. Id., 59:23–60:1, 63:24–64:19. Plaintiffs predict business closures and layoffs if enforcement proceeds. See id., R. Saleh, 45:11-17; K. Patel, 73:4–74:9.

**Legal Standard**

Plaintiffs' motions for summary judgment were denied. Defendants' motion for summary judgment was granted. The net effect of those rulings resulted in the denial of plaintiffs' request to enjoin the enforcement provisions of Act 57 as to all manufacturers, distributors, and sellers in the Commonwealth. That ruling is on appeal.

While an appeal is pending from a final judgment that refuses an injunction, "the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." FED. R. CIV. P. 62(d). Now that the Commonwealth is enforcing Act 57, plaintiffs narrow their request to an order preventing enforcement against them while they appeal the summary

judgment rulings. Although the requested injunctive relief has been modified, plaintiffs' motion is still covered by Rule 62(d).

"Injunctions pending appeal . . . are 'extraordinary remed[ies] never awarded as of right.'" Donald J. Trump for President, Inc. v. Sec'y of Pa., 830 F. App'x 377, 389 (3d Cir. 2020) (quoting Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008) (alteration in original)). Four factors govern requests like this one: (1) whether the applicants have made a strong showing that they are likely to succeed on the merits; (2) whether the applicants will be irreparably injured absent an injunction; (3) whether issuance of the injunction will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. Nken v. Holder, 556 U.S. 418, 434 (2009) (citation omitted); see also In re Revel AC, Inc., 802 F.3d 558, 565 (3d Cir. 2015) (citing Republic of Philippines v. Westinghouse Elec. Corp., 949 F.2d 653, 658 (3d Cir. 1991)). The first two factors are "the most critical." Nken, 556 U.S. at 434. The third and fourth factors "merge when the Government is the opposing party." Id. at 435.

Relief pending appeal is dependent on the facts and circumstances of each case. Id. at 433. Given the need to make an individualized judgment, all four factors are subject to balancing using a sliding-scale approach if the first two gatekeeping factors are met. In re Revel AC, Inc., 802 F.3d at 567–71. Put another way, the balancing act proceeds with the following inquiries:

> Did the applicant make a sufficient showing that (a) it can win on the merits (significantly better than negligible but not greater than 50%) *and* (b) will suffer irreparable harm absent a stay?
>
> If it has, we balance the relative harms considering all four factors using a sliding scale approach. However, if the movant does not make the requisite showings on either of these first two factors, the inquiry into the balance of harms [and the public interest] is unnecessary, and the stay should be denied without further analysis.
>
> But depending on how strong a case the stay movant has on the merits, a stay is permissible even if the balance of harms and public interest weigh against holding a ruling in abeyance pending appeal.

Id. at 571 (citation modified).

Plaintiffs "bear[] the burden of showing that the circumstances justify an exercise of [the court's] discretion." Nken, 556 U.S. at 434 (citations omitted).

**Analysis**

**1. Significant Showing of Success on the Merits**

On the first factor, the plaintiffs must make a sufficient showing—significantly better than negligible but not greater than 50%—that it can win on the merits. In re Revel AC, Inc., 802 F.3d at 571. Here, the plaintiffs' preemption arguments have basic structural problems.[2]

[2] The court incorporates the full reasoning of its prior summary judgment decision. MMA Grp 1, Inc., 2026 WL 3077462.

Specifically, the court's summary judgment decision concluded that Act 57 falls within the TCA's Savings Clause at 21 U.S.C. § 387p(a)(2)(B) as a sales regulation and is therefore not expressly preempted. MMA Grp. 1 Inc., 2026 WL 3077462 at *7–10, *13. The court also concluded that Act 57 is not preempted by the implication of 21 U.S.C. § 337(a) and the principles set forth in Buckman Co. v. Plaintiffs' Legal Committee, 531 U.S. 341 (2001). Id. at *10–11.

Those conclusions are consistent with decisions of the Fourth, Seventh, and Eighth Circuits addressing other states' nicotine vape product directory laws. Vapor Tech. Ass'n v. Wooten, 184 F.4th 329 (4th Cir. 2026); Wisconsinites for Alts. to Smoking & Tobacco, Inc. v. Casey, 172 F.4th 976 (7th Cir. 2026); Iowans for Alts. to Smoking & Tobacco, Inc. v. Mosiman, 183 F.4th 1040 (8th Cir. 2026). Furthermore, the Ninth Circuit's decision in Rocky Patel Premium Cigars, Inc. v. Bonta, No. 25-8060, ___ F.4th ____, 2026 WL 2529324 (9th Cir. 2026), provides additional support for the proposition that state requirements serving as sales prerequisites fit comfortably within the Savings Clause. Plaintiffs cannot identify any circuit authority running the other way. They present no arguments in conjunction with the motion before the court that have not already been addressed and rejected.

Rather, plaintiffs' motion focuses on arguments that already received fair consideration at the summary judgment stage. First, the court assumed the truth

of plaintiffs' assertion that Act 57 was "backdoor" premarket review. MMA Grp. 1 Inc., 2026 WL 3077462 at *8–10. That is, the court agreed with plaintiffs that Act 57 falls within the TCA's Preemption Clause at 21 U.S.C. § 387p(a)(2)(A) because its requirements relate to premarket review. Id. Nonetheless, the court then held that the Savings Clause at 21 U.S.C. § 387p(a)(2)(B) saves Act 57 because the statute imposes "requirements relating to the sale, distribution, possession, [and] information reporting to the State." Id. Plaintiffs' motion does not explain how the Third Circuit could reach a different result without trivializing the Savings Clause.

Second, plaintiffs highlight that the court recognized a circuit disagreement over whether a presumption against preemption applies to § 387p. Id. at *7 n.8. This disagreement does not help the plaintiffs. The court declined to apply a judicial presumption against preemption in this case, which would favor the defendants, and still concluded that Act 57 was not preempted.

Third, plaintiffs stress that the court described some of their criticisms of the other circuits' reasoning as "well taken." Id. at *8. The court acknowledged plaintiffs' critiques, including an issue with how the Seventh Circuit supported one of its propositions. Id. at *11–13. Plaintiffs, however, cannot demonstrate that the Third Circuit is likely to reverse merely by showing that some sister-circuit reasoning can be questioned. Even with this acknowledgement, the court still

reached the same result as those circuit-level decisions through its own reading of the federal statutes at issue.

Fourth, the court directly engaged with plaintiffs' argument that the Savings Clause must have some limitation; otherwise, the Preemption Clause would be surplusage. Id. at *12–13. In considering that argument, the court relied on the Second Circuit's view of § 387p. Id. at *13 (citing U.S. Smokeless Tobacco Mfg. Co. LLC v. City of New York, 708 F.3d 428 (2d Cir. 2013)). Under that view, state laws that encroach on the manufacturing-side determinations of the "the scientifically expert FDA" are preempted, while laws that operate as a sales ban without that type of encroachment are not. Id. Since Act 57 operates as a sales ban within the Savings Clause carve-out to the Preemption Clause, it is not preempted. Id.

Plaintiffs' theories under 21 U.S.C. § 337(a) and Buckman Co. v. Plaintiffs' Legal Committee, 531 U.S. 341 (2001) fare no better. Under the law, all proceedings for the enforcement of the FDCA shall be in the name of the United States. 21 U.S.C. § 337(a). To enforce Act 57, however, the state never has to prove a violation of the FDCA. MMA Grp. 1 Inc., 2026 WL 3077462, at *11. The Commonwealth need only prove that an unlisted product was sold or offered for sale in Pennsylvania. Id. (citing 72 PA. STAT. § 206-I (n), (*o*)). A manufacturer may be excluded from the directory for purely state-law reasons and still comply

fully with federal law. Id. (citing 72 PA. STAT. § 206-I (c), (i), (j), (k), (u)). And "cross-referencing to FDA approval orders is not equivalent to enforcing the FDCA itself." Id. (quoting Casey, 172 F.4th at 989).

Under the applicable standard for an injunction, plaintiffs are not required to show that their success on appeal is more likely than not. In re Revel AC, Inc., 802 F.3d at 569 (citation omitted). But a request to break with the above reasoning, which is consistent with every circuit that has addressed these questions, is not a showing "significantly better than negligible." Id. at 571. Plaintiffs have not met the first factor.

Consequently, plaintiffs' failure to meet the first factor requires denial of the injunction pending appeal. Id. at 570–71. For completeness and because the remaining factors also weigh against relief, the court will continue with the discussion.

**2. Irreparable Harm**

On the second factor, the movant must demonstrate that irreparable injury is "likely," not just "merely possible" in the absence of relief. S.S. Body Armor I., Inc. v. Carter Ledyard & Milburn LLP, 927 F.3d 763, 772 (3d Cir. 2019) (citation modified). And courts "understand 'likely' to mean more apt to occur than not." Id. (citation modified).

Plaintiffs assert that business closures are all but certain as the result of Act 57. (Doc. 26, Hr'g Tr., R. Saleh, 45:11-17; K. Patel, 73:4–74:9). Generally, "a purely economic injury, compensable in money, cannot satisfy the irreparable injury requirement, but an exception exists where the potential economic loss is so great as to threaten the existence of the movant's business." Minard Run Oil Co. v. U.S. Forest Serv., 670 F.3d 236, 255 (3d Cir. 2011) (citation modified). Such economic losses, as great as they may be, cannot be recovered from the Commonwealth. Temple Univ. v. White, 941 F.2d 201, 214–15 (3d Cir. 1991). Taking plaintiffs at their word, the court presumes that they presented evidence of irreparable injuries in this case.[3]

But such evidence of irreparable injury is only part of the story. The equitable authority afforded to federal courts is not freewheeling. Trump v. CASA, Inc., 606 U.S. 831, 841 (2025). Rather, the court's authority to provide equitable relief "'must comply with longstanding principles of equity that predate the country's founding.'" Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec., 108 F.4th 194, 198–200 (3d Cir. 2024), cert. denied

[3] Defendants make three good points in opposing the motion: 1) plaintiffs had approximately ten months between enactment and enforcement to comply with Act 57; 2) plaintiffs' unlisted vapes can be sold in other states; and 3) plaintiffs' can change their product mix based on the nicotine vapes listed on the Commonwealth's product directory, which includes products without FDA marketing granted orders. (Doc. 58 at 12–13). In contrast, however, a co-owner of the Tobacco Hut entities testified that the profit margins on federally unauthorized vapes were between 60% to 80% compared to 4%-7% on the authorized products. (Doc. 26, Hr'g Tr., R. Saleh, 40:25–41:19).

sub nom. Gray v. Jennings, 145 S. Ct. 1049 (2025) ("DSSA") (quoting Trump v. Hawaii, 585 U.S. 667, 716 (2018) (Thomas, J., concurring)). Put another way, the relief requested by the plaintiffs must have been traditionally afforded by courts of equity. Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc., 527 U.S. 308, 319 (1999).

The equitable maxims do not favor the plaintiffs in this case. The Third Circuit has recognized "the general equitable principle that '[n]o court will lend its aid to a man who founds his cause of action upon an immoral or illegal act.'" Am. Bell Inc. v. Fed'n of Tel. Workers of Pa., 736 F.2d 879, 886 (3d Cir. 1984) (quoting Holman v. Johnson, 1 Cowp. 341, 343, 98 Eng.Rep. 1120, 1121 (1775)). In equity, "it is said, that he who comes here for relief, must draw his justice from pure fountains." Austin's Adm'x v. Winston's Ex'x, 11 Va. 33, 48 (1806). Furthermore, the equitable maxim "he who comes into equity must come with clean hands" provides "wide range to the equity court's use of discretion in refusing to aid the unclean litigant." Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co., 324 U.S. 806, 814–15 (1945) (citation omitted).

Plaintiffs' harm is the result of selling nicotine vapes that lack FDA marketing authorization. (Doc. 26, Hr'g Tr., R. Saleh, 41:10-21; 42:5-11 (conceding that Tobacco Hut's own "Hut Bar" vape has not been FDA approved despite two to three years of sales)). Although it is true that "the FDA has

adopted a deferred, case-by-case enforcement regime" with respect to unauthorized nicotine vapes, Mosiman, 183 F.4th at 1046, this decision does not change federal law. Companies that sell "new tobacco products" without authorization are subject to "stiff penalties" ranging from civil monetary penalties to imprisonment under federal law. FDA v. Wages & White Lion Invs., LLC, 604 U.S. 542, 555 (2025) (citing 21 U.S.C. §§ 331(a), 333(a)(1), (f)(9)). That means the FDCA "renders lost revenue from unauthorized ENDS products . . . illegal." Wooten, 184 F.4th at 363 (Quattlebaum, J., dissenting).

Against this backdrop, the court cannot ignore the obvious. The requested injunction seeks to hinder state law so that the plaintiff businesses can continue to violate federal law pending an appeal. Using traditional principles of English equity law as the test, a chancellor would dismiss a bill if asked to restrain a sheriff so a petitioner could commit an offense against the crown. Brought forward to the present, the court is not empowered to issue an injunction that would let the plaintiffs violate federal law while challenging a state law.

**3. Harm to Other Parties and the Public Interest**

The court discusses the last two factors to inform the appellate record. See In re Revel AC, Inc., 802 F.3d at 571. These factors merge when the government is the opposing party. Nken, 556 U.S. at 435.

The General Assembly enacted Act 57 to restrict sales of nicotine vapes that, among other things, are not FDA approved or in process. 72 PA. STAT. § 206-I (a), (b)(1). The Commonwealth thus has an interest in enforcing a duly enacted product registry law that reflects an approach taken by at least fifteen other state legislatures. DSSA, 108 F.4th at 205–06; MMA Grp 1 Inc., 2026 WL 3077462 at *3 n.3. An injunction pending appeal would suspend enforcement of Act 57's seizure and penalty provisions for months or longer, depending on the pace of appellate proceedings. During that time, nicotine vapes lacking FDA authorization would remain available for sale to Pennsylvania consumers. Therefore, by an injunction, the Commonwealth would be placed in a position where it would be subject to irreparable harm. See New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co., 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers) ("[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.").

Plaintiffs' motion for an injunction pending appeal also requests that the Commonwealth be enjoined from enforcing the law only as to their businesses while their competitors' nicotine vapes—FDA authorized or not—are subject to Act 57's requirements. See CASA, Inc., 606 U.S. at 842 ("The Chancellor's remedies were also typically party specific."). A parties-only injunction with respect to Act 57 would create a special exception where only plaintiffs'

competitors would have to comply with the law. That outcome would undermine the Act 57 regulatory scheme already in place and warp the state economic landscape by giving the plaintiffs a competitive advantage in the nicotine vape marketplace. These considerations also foreclose injunctive relief.

In short, plaintiffs' chance of success on appeal is slight, their asserted harm consists of losing income on products that federal law forbids them to sell, and the Commonwealth and the public would be harmed by an injunction. Thus, for the above reasons, plaintiffs' motion for temporary injunction pending appeal and motion for temporary administrative relief, (Doc. 53), is **DENIED**.

**Date:** 10/28/26

**BY THE COURT:**

**JUDGE JULIA K. MUNLEY**
**United States District Court**